## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **KENDRICK BERNARD DEMUS,** | ) | |
| **ID # 1553377,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:15-CV-1723-M (BH)** |
| | ) | |
| **LORIE DAVIS,**[1]**Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

### I.  BACKGROUND

Kendrick Bernard Demus (Petitioner) challenges his conviction for capital murder.  The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

#### A.    State Proceedings

On August 6, 2007, the State indicted Petitioner for capital murder in Cause No.  F07-53430. (Doc. 10-8 at 5.)[2]  He pleaded not guilty and was tried before a jury in the 363rd Judicial District Court of Dallas County, Texas, on February 2-4, 2009.  (Doc. 10-15 at 3.)

After jury selection began, the parties announced a plea agreement for the lesser offense of murder.  (*Id*. at 24-pp. 54-56.)  Petitioner testified he was not guilty, however.  (*Id*. at 25-p. 60.)  The

---

[1]Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing

court did not accept the guilty plea.  (*Id*. at 26-p. 61.)

The evidence at trial was summarized by the state appellate court as follows:

Demus advertised a car for sale on Craig's List and Christian Marton responded to the internet advertisement.  Marton, Monica Stafford, his girlfriend, Lisa Marton, his younger sister, and his cousin Benny drove Stafford's red Tahoe to Dallas to see the advertised car at a Whataburger.   Stafford and Lisa Marton went inside the Whataburger while Marton and Benny met with Demus.  After test driving the car, the three men went inside the Whataburger.   Marton discussed with his sister whether he should buy the car.  Demus became "very mad," told them that they were "wasting his time because he'[d] been there for an hour and [ ] he ha[d] other stuff to do," and he walked out.  However, afterward, Demus called Marton repeatedly and the two continued to discuss the price of the car.

Meanwhile, Demus told George Carter that someone was going to buy the car from him and asked if Carter was willing to "jack" or rob him.  They agreed to divide the money 50/50.  A few days later, Demus called Carter, told him Marton was coming to Dallas to meet him, and asked Carter to "jack" him.  Carter met with Demus and Demus gave him a gun wrapped in a black T-shirt.  Then, Demus told Carter where to find Marton.

Four days later, Marton called Stafford, told her Demus had lowered the price of the car, and stated he wanted to go get the car.  Marton and Stafford drove to Dallas in the red Tahoe, which had a trailer attached for the purpose of transporting the car.  Marton and Stafford planned to meet Demus at the Whataburger.  However, Demus told Marton he was already at "the apartment complexes" and gave them directions.  Marton and Stafford did not see Demus or the car in the apartment complex, so they parked outside the complex and called Demus to tell them where they were.

While waiting for Demus to arrive, Marton stood outside the Tahoe talking to Benny on his cellular telephone.  Stafford remained inside the Tahoe "texting."  On the windows of the Tahoe was a written notice that the rims were for sale.  Carter approached Marton and inquired about the rims on the Tahoe.  Then, Stafford heard Carter say "give me your money and get off the phone."  She said she saw Carter point a gun at Marton.  Then, Marton reached for his concealed gun and Carter fired the gun at Marton.  She heard Marton scream and watched Carter turn and run away.  Marton died from the gunshot wound.

*Demus v. State*, No. 05-09-00175-CR, 2010 WL 277092 at *1 (Tex. App. – Dallas Jan. 26, 2010).

George Carter testified that his case was set for trial several months before Petitioner's trial,

and he pled guilty to capital murder.  (Doc. 10-15 at 73-p. 89, 76-pp. 101-02.)   He did not

necessarily expect his charge to be reduced from capital murder to murder. (*Id.*) He hoped that the District Attorney would take his cooperation into consideration and give him a lesser sentence, but that was not part of the deal. (*Id.* at 76-p. 102-03.)

Monica Stafford testified that during the next few days after Petitioner met them at the Whataburger, Petitioner and Marton continued to call each other about the price for the car. (Doc. 10-15 at 55-pp. 18-19.) When Stafford and Marton arrived in Dallas, Marton called Petitioner for directions. (*Id.* at 56-pp. 21-22.) When they arrived at the apartment complex and did not see Petitioner, Marton called him about ten to fifteen minutes before the murder and told him the vehicle they were in and where they were parked. (*Id.* at 56-p. 22.) After the murder, she immediately called 911. (*Id.* at 56-p. 24.) The 911 call was made at 10:11 p.m. (*Id.* at 83-p. 132.)

George Carter testified that Petitioner called him on the evening of the murder and told him that Marton was coming to Dallas to meet him and that Carter could rob Marton. (*Id.* at 69-p. 75.) Carter and Petitioner called each other several times that evening. (*Id.* at 69-p. 76.) He met Petitioner and they went to the apartment complex. (*Id.* at 70-p. 77.) Petitioner called Marton and said he would be there in a minute. (*Id.* at 70-p. 80.) Carter went to find Marton, and he called Petitioner when he saw him. (*Id.*) After the murder, Petitioner called Carter. (*Id.* at 72-p. 85.)

Detective John Palmer testified that he had Petitioner's cell phone records, and Petitioner had lied about who he called around the time of the murder during an interview. (*Id.* at 78-p. 112, 79-p. 113.) Petitioner said he did not call Carter. (*Id.* at 84-p. 134.) He also said he was supposed to meet Marton and Stafford at a restaurant. (*Id.* at 80-p. 119.)

Petitioner's cell phone records showed that he called Marton on the evening before the murder, and that Carter called Petitioner later that evening. On the day of the murder, Petitioner and

Marton called each other several times.  That evening, Petitioner called Marton at 6:33 p.m., and

Marton called Petitioner at 7:52 p.m.  Petitioner called Carter at 8:54 p.m., and Carter called

Petitioner at 9:14 p.m.  Petitioner called Carter at 9:24 p.m.  Marton called Petitioner at 9:29 p.m.

and again at 9:42 p.m.  Shortly thereafter, Petitioner called Carter.  Marton called Petitioner at 9:48

p.m.  Petitioner called Carter at 9:50 p.m.  Marton called Petitioner at 9:54 p.m.  Carter called

Petitioner at 10:06 p.m.  Marton called Petitioner at 10:08 p.m.  Marton called Carter at 10:09 p.m.

(*Id*. at 81-p.122 – 82-p. 125.)  The 911 call came at 10:11 p.m.  (*Id*. at 83-p. 132.)  Petitioner called

Carter at 10:14 p.m., 10:16 p.m., 10:18 p.m., and 10:30 p.m.  He called Carter several more times,

but the calls were not answered.  (*Id*. at 82-p. 125-26.)

The jury convicted Petitioner, and the court sentenced him to life imprisonment. (Doc. 10-12

at 3.)  The judgment was affirmed on appeal.  *Demus v. State*, 2010 WL 277092.  His petition for

discretionary review was refused.  *Demus v. State*, PD-0183-10 (Tex. Crim. App. June 9, 2010).

Petitioner's state habeas application, signed on August 26, 2011, was received by the state

court on September 22, 2011.  (Doc. 10-25 at 5, 25.)  He filed a supplement to his application raising

additional claims.  (Doc. 10-26 at 86.)  Documents from Carter's criminal case were included in the

state habeas record.  On October 6, 2008, which was before his testimony, he entered a plea

agreement for an open plea of guilty to capital murder and agreed to testify.  (Doc. 10-25 at 151-

153.)  On March 2, 2009, after he testified, the State filed a motion to reduce the offense to murder,

which was granted.  (*Id*. at 154.)  On that same date, he entered a plea agreement for a 20-year

sentence for murder, and judgment was entered in accordance with the agreement.  (Doc. 10-26 at

1-3.)  The state habeas court found that Carter entered into an open plea of guilty to capital murder

on October 6, 2009; he did not have a plea offer for a reduced charge at the time he testified against

Petitioner on February 3, 2009; the State reduced the charge against him to murder on March 2, 2009; and his testimony on that matter was not false or misleading. (*Id*. at 62-63.)  The application was denied without written order.  (Doc. 10-24); *see Ex parte Demus*, WR-82,740-01 (Tex. Crim. App. May 6, 2015).

B.    **Substantive Claims**

Petitioner's habeas petition, received on May 19, 2015, raises the following grounds:

(1)  The State presented false or misleading testimony;

(2)  The trial court erred in rejecting the plea bargain agreement;

(3)  The trial court failed to provide an accomplice-witness instruction;

(4)  Trial counsel was ineffective for:

    (a)  failing to request an accomplice-witness instruction;

    (b)  failing to secure a plea agreement or preserve error for appeal;

    (c)  failing to develop a sound trial strategy;

(5)  Appellate counsel was ineffective for:

    (a)  failing to raise a claim regarding the lack of an accomplice-witness instruction;

    (b)  failing to raise a claim that the State presented false or misleading testimony;

(6)  The evidence was insufficient to support the conviction;

(7)  The sentence was excessive and disproportionate.

(Doc. 3 at 7-17.)  Respondent filed a response to the petition on September 9, 2015.  (Doc. 11.) Petitioner filed a reply on October 23, 2015.  (Doc. 14.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to

procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if

the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v.*

*Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court

precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  REJECTION OF PLEA AGREEMENT

Petitioner claims that after the trial court did not accept his guilty plea to the lesser offense of murder, the State offered a plea agreement for a 25-year sentence for aggravated robbery, but the court stated that no plea negotiations would be entertained. (Doc. 3 at 7, 9.)

The state habeas court found that Petitioner attempted to plead guilty to murder, and not to aggravated robbery. (Doc. 10-26 at 64.) The record does not show, and Petitioner does not provide any evidence to support his assertion, that there was an agreement to plead guilty to aggravated robbery. Further, there is no constitutional right to a plea agreement, and the trial court has discretion to reject a guilty plea. *Montez v. Thaler*, No. SA-09-CV-805, 2010 WL 3058392 at *12 (W.D. Tex. Aug. 2, 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *Santobello v.*

*New York*, 404 U.S. 257, 262 (1971)).  He has not shown that the state court's rejection of his claim

was an unreasonable application of federal law or an unreasonable determination of the facts.

## IV.  PERJURED TESTIMONY

Petitioner contends that the State presented false testimony when George Carter testified that

he had pled guilty to capital murder.  (Doc. 3 at 7, 8.)

The Supreme Court has held that the presentation of false evidence at trial, as well as the

admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal

defendant's due process rights if the reliability of a given witness may be determinative of guilt or

innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In order to prevail on a claim that his

constitutional rights were violated by the presentation of false testimony, a petitioner must establish

that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was

material.  *Napue*, 360 U.S. at 271.  Knowledge of falsity is attributed to the prosecutor as the

spokesperson for the government.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Supreme

Court has also stated that a new trial is dictated only when the false testimony could, in any

reasonable likelihood, have affected the judgment of the jury.  *Napue*, 360 U.S. at 271.

Documents from Carter's case show, and the state habeas court found, that he pled guilty to

capital murder before he testified in Petitioner's case, that the State moved to reduce the charge to

murder after he testified, and that his testimony that he pled guilty to capital murder was not false.

Petitioner has not shown the state court's rejection of his claim was unreasonable.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends trial counsel was ineffective for failing to request an accomplice-witness

instruction, secure a plea agreement or preserve error for appeal, or develop a sound trial strategy.

(Doc. 3 at 10, 12-14.)

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696.  The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A petitioner must "affirmatively prove prejudice." *Id.* at 693.  The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-

9

96.   One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).   Conclusory allegations are insufficient to obtain federal habeas relief.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.      **Accomplice-Witness Instruction**

Petitioner contends that counsel should have requested an accomplice-witness jury instruction.

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  Tex. Code Crim. Proc. art. 38.14.  An accomplice is a person who participates in the offense to the extent that he can be charged with the offense.  *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).  A prosecution witness who has been indicted for the same offense as the defendant is an accomplice as a matter of law, and an instruction under art. 38.14 is required.  *Id.*

It is undisputed that Carter was an accomplice witness.  In addition to his testimony, there was evidence that Petitioner met Marton to discuss a car sale.  After further communications about the sale, they arranged to meet again at an apartment complex, where Carter murdered Marton.  According to Carter, he and Petitioner planned for Carter to rob Marton.  Petitioner's cell phone records showed phone calls between Marton and Petitioner, and between Carter and Petitioner leading up to, immediately before, and immediately after the murder.  Assuming that counsel's

performance was deficient for failing to request an accomplice-witness instruction, Petitioner has not shown prejudice because there was evidence in addition to Carter's testimony that tended to connect him with the capital murder.  Petitioner has not shown that the state court's rejection of this claim was unreasonable.  *See Washington v. Davis*, No. 3:15-CF-2046, 2016 WL 8137653 at *6 (N.D. Tex. Nov. 30, 2016), *rec. adopted*, 2017 WL 412643 (N.D. Tex. Jan. 31, 2017) (state court did not unreasonably reject claim based on no prejudice where there was ample evidence to corroborate the accomplice witness's testimony); *Sandoval v. Davis*, No. 2:13-CV-117, 2016 WL 5115414 at *7 (N.D. Tex. Sept. 1, 2016), *rec. adopted*, 2016 WL 5121762 (N.D. Tex. Sept. 20, 2016) (no prejudice based on the amount of corroborating evidence).

**B.**     **Plea Agreement**

Petitioner asserts that counsel failed to get a plea agreement for the lesser offense of aggravated robbery or to preserve for appeal the court's rejection of the plea agreement.

As discussed, the record does not show, and Petitioner does not provide any evidence to support his assertion, that there was an agreement for him to plead guilty to aggravated robbery. Further, there is no constitutional right to a plea agreement, and the trial court has discretion to reject a guilty plea. *Montez v. Thaler*, 2010 WL 3058392 at *12.  Additionally, under Texas law, a trial court has broad discretion to accept or reject a guilty plea. *Rodriguez v. State*, 470 S.W.3d 823, 828 (Tex. Crim. App. 2015).  Petitioner has not shown that the trial court abused its discretion in rejecting any plea agreement for aggravated robbery, and he has not shown there was any error to preserve relating to the rejection of any plea agreement.  He has not shown that the state court's rejection of the claim was unreasonable, or that his attorney's performance was deficient.

C.      **Trial Strategy**

Petitioner claims that counsel failed to develop a sound trial strategy because he did not

interview Carter.  He does not show that Carter would have talked to counsel, or that counsel was

unaware of what Carter's testimony was going to be.  He does not allege how counsel's strategy was

unsound.  He has not shown deficient performance, or that the state court's rejection of this claim

was unreasonable.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims that appellate counsel was ineffective for failing to appeal the lack of an

accomplice-witness instruction or the State's presentation of false testimony.  (Doc. 3 at 15.)

The federal constitution also guarantees a criminal defendant the effective assistance of

counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been

ineffective is also determined under *Strickland*.  The petitioner must show a reasonable probability

that but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno*

*v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-

frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead,

to be deficient, the decision not to raise an issue must fall 'below an objective standard of

reasonableness.'"  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*,

466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or

make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments

based on directly controlling precedent should be discovered and brought to the court's attention."

*Williamson*, 183 F.3d at 462–63 (footnote and citations omitted).  To determine whether appellate

12

counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

## A.      Accomplice-Witness Instruction

As discussed, Petitioner has not shown that he was prejudiced by the lack of an accomplice-witness jury instruction because there was evidence other than Carter's testimony that tended to connect him to the offense.  For those same reasons, the state habeas court found that the absence of an accomplice-witness instruction was harmless.  He has not shown that the state court's rejection of this claim was unreasonable, or that appellate counsel was deficient for failing to raise it.

## B.      Alleged False Testimony

As discussed, Petitioner has not shown that Carter's testimony was false or misleading.  He has not shown deficient performance or that the state court unreasonably rejected this claim.

## VII.  ACCOMPLICE-WITNESS INSTRUCTION

Petitioner contends that the trial court failed to provide an accomplice-witness instruction. (Doc. 3 at 10.)

To warrant federal habeas relief on the basis of a violation of due process due to an error in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair.  *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154–55 (1977)).  The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned." *Wright v. Director, TDCJ*, No. 9:11–CV–204, 2012 WL 7159911, at * 20 (E.D. Tex. Oct.2, 2010) (citing *Henderson*, 431 U.S. at 155)), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb.19,

2013).

The failure to give an accomplice-witness jury instruction is not a constitutional violation. *See White v. Stephens*, No. 2:12-CV-121, 2015 WL 5252108 at *10 (N.D. Tex. Aug. 21, 2015), *rec. adopted*, 2015 WL 5278380 (N.D. Tex. Sept. 9, 2015).  Further, because there was evidence other than Carter's testimony that tended to connect Petitioner to the offense, any error in failing to give an accomplice-witness instruction was harmless.

### VIII.  SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the evidence was insufficient to support the conviction because the accomplice witness's testimony was not corroborated.  (Doc. 3 at 16.)

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320.  Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*.  Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).  They do not "second-guess[ ] the weight or credibility given the

evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

The state appellate court held that the evidence was sufficient to support the conviction. *See Demus*, 2010 WL 277092 at 3-5. Under the law of parties, a conspirator should anticipate that a murder would occur if he knows that a co-conspirator was carrying a gun. *See id*. (citing *Longoria v. State*, 154 S.W.3d 747, 755 (Tex. App. – Houston [14th Dist.] 2004). There was evidence that Petitioner and Carter planned the robbery, and that Petitioner gave Carter a gun for the robbery. The Texas accomplice-witness rule does not factor into an analysis of the sufficiency of the evidence on federal habeas corpus under *Jackson v. Virginia*. *See Clay v. Cockrell*, No. 02-20183, 2002 WL 31017137 at *5 (5th Cir. Aug. 20, 2002) ("'[T]he Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence. Accordingly, the prosecution's failure to satisfy the requirements of the accomplice-witness sufficiency rule, and a state court's failure to enforce that purely state rule, simply [does] not warrant constitutional attention.' *Brown v. Collins*, 937 F.2d 175, 182 n.12 (5th Cir. 1991)."); *see also Shy v. Director*, No. 4:11CV378, 2014 WL 4683756 at *12-13 (E.D. Tex. Sept. 19, 2014) (accomplice-witness rule not considered in federal habeas review of the sufficiency of evidence, because it is a state rule and not a constitutional requirement). Even if the accomplice-witness rule applies to a federal habeas review of the sufficiency of the evidence, the evidence was sufficient because, as discussed, non-accomplice evidence corroborated Carter's testimony. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## IX. EXCESSIVE/DISPROPORTIONATE SENTENCE

Petitioner contends that his life sentence is excessive and disproportionate, because Carter was the shooter but only received a 20-year sentence. (Doc. 3 at 17.)

15

The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits sentences that are grossly disproportionate to the offense. *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). A mandatory life sentence for murder is not grossly disproportionate. *See United States v. Forbes*, 282 F. App'x 324, 325 (5th Cir. 2008). Nor has Petitioner that his life sentence is unconstitutional when compared to Carter's sentence. *See Russell v. Collins*, 998 F.2d 1287, 1294 (5th Cir. 1993) (no constitutional violation where defendant received the death penalty and a conspirator pled guilty in return for a 60-year sentence, absent a showing of vindictiveness or use of an arbitrary standard). He has not shown his sentence was the product of vindictiveness or the use of an arbitrary standard. He has not shown that the state court's rejection of this claim was unreasonable.

## X. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## XI. RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 3rd day of April, 2017.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE